UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODRIC JUAVON SHORTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3047** |
| **L.P.N. B. OUBRE, DEPUTY M. WILSON, DEPUTY C. COYLE, DEPUTY R. MORRIS, DEPUTY H. CHARLES** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Under Rule 12(B) for Failure to State a Claim (Rec. Doc. No. 17)** filed by the defendant B. Oubre, L.P.N. This matter and the motion were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On September 29, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that the motion and these matters can be disposed of without an evidentiary hearing.

**I.   Factual and Procedural Background**

   **A.   The Complaint**

The plaintiff, Rodric Juavon Shorts, an inmate currently incarcerated in St. John Baptist Parish Correctional Center in LaPlace, Louisiana, filed this *pro se* and *in forma pauperis* complaint

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 15. The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

pursuant to 42 U.S.C. § 1983 against B. Oubre, LPN, Deputy M. Wilson, Deputy C. Coyle, Deputy R. Morris, and Deputy H. Charles asserting claims of excessive force and medical indifference.

In the complaint, Shorts alleges that the deputies used excessive force against him while he was on the ground. He claims that Deputy Wilson choked him and Deputies Morris and Charles pinned him to the ground. Shorts further claims that, when he was taken to the medical unit, Nurse Oubre did not address his claims that his hand was injured. He asserts that he suffered for six days until May 28, 2015, when he was taken to the emergency room and his broken hand was placed in a splint. He seeks monetary damages.

Shorts attached to the complaint copies of Administrative Remedy Procedure Complaint F-001-15, in which Shorts makes similar complaints to the prison officials about the incident and his medical treatment.[3] His grievance request was denied at the supervisory level on June 5, 2015.[4] On June 22, 2015, Captain J. Trosclair responded at the second level of review and found the grievance to be unfounded indicating that he was present during the incident and had reviewed the video footage which did not support a finding of any wrongdoing by the deputies or the nurse.[5] The third level of appeal to the Warden was also denied on July 7, 2015.[6] Shorts also attached copies of several inmate request forms requesting medical attention or seeking information about his administrative remedy proceedings.[7]

---

[3]Rec. Doc. No. 4, p. 7.

[4]Rec. Doc. No. 4, pp. 7, 9.

[5]Rec. Doc. No. 4, p. 8.

[6]Rec. Doc. No. 4, p. 8.

[7]Rec. Doc. No. 4, pp. 10-14.

### B.     The *Spears* Hearing

Shorts testified that he was presently incarcerated on a parole violation. He stated that, on the day of this incident, he was incarcerated in the Nelson Coleman Correctional Center in St. Charles Parish. He met with his attorney who advised him that a confidential information ("CI") had given information to the police. As a result of the CI's statement, the attempted burglary charge against Shorts was upgraded to attempted armed robbery, although the charge was eventually dismissed. The CI, Tyrone Preisley, happened to be incarcerated in the same dorm as Shorts, and he initiated an altercation with Preisley.

Shorts indicated that, after several minutes of fighting, the two men ended up on the floor and he was on top of Preisley. The deputies eventually entered the dorm and ordered him to get off of Preisley. He told them that he could not because Preisley was holding him. Shorts further stated that, at that time, Deputy Wilson grabbed him around his neck and pulled him up to his feet. Shorts claims that he could not breathe, so he pushed Deputy Wilson's hands off of his neck. He then laid back down on the floor, because he was surrounded by the other deputies. The other deputies, Coyle, Morris, and Charles, then put their knees and feet on his back to keep him from moving. One deputy then pulled his arm back to place him in handcuffs. As a result of the fight, Shorts received disciplinary charges for fighting, aggravated disobedience, unsanitary practices and theft, and served thirty days in lockdown.

Shorts further claims that, when he was taken to lockdown, he told the deputies that he needed medical attention for his hand. Shorts stated that he broke his hand when he punched Preisley and not as a result of the actions by the deputies. The deputies told him to fill out a sick call. When he told them it was an emergency, he did see Nurse Oubre. Shorts stated that she looked

at his hand and told him she would schedule him for an x-ray. He also filled out a sick call form requesting additional treatment. Several days later, after the Memorial Day holiday, he was seen in the prison medical unit and an x-ray was taken. As a result, he was taken to emergency room where his hand was placed in a splint. He eventually was placed in a longer cast. Shorts recalled that the doctor told him that there was blood pooled inside of his hand, and he should have been seen sooner.

Shorts advised the Court that he sued the deputies, because of the way Deputy Wilson grabbed his neck and the way the other deputies handled him when he was not resisting. He also sued Nurse Oubre because she should have sent him to the emergency room and made him wait for treatment of his broken hand. He claims that he should be awarded monetary relief for his pain, suffering, and mental anguish.

### C.      Oubre's Motion to Dismiss (Rec. Doc. No. 17)

Nurse Oubre has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting that Shorts's claims against her are premature, because he did not present his claims to a medical review panel as required by La. Rev. Stat. § 40:1299.41 ("the Act") and has not pled facts sufficient to show a breach of duty "under state law or any other law."[8] Oubre, a qualified healthcare provider, argues that Shorts's claims against her are in the nature of medical malpractice related to his medical treatment. As such, the Act requires that he convene a medical review panel before proceeding against her. Shorts has not filed an opposition to the motion.

---

[8] Rec. Doc. No. 17, p. 1.

## II.     Standards of Review

### A.      Review of Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) allows the Court to dismiss a complaint for failure to state a claim upon which any relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff.  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011); *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F .3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (internal citation omitted).  Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Guidry*, 512 F.3d at 180 (quotations marks and citation omitted).  The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Rhodes v. Prince*, 360 F. App'x 555, 557-58 (5th Cir. 2010). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In resolving the motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Interm. Unit v. Penn. Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The Court will consider the grievance and disciplinary records referenced by the plaintiff and provided by the defendants on the Court's order.

When reviewing a *pro se* complaint, the United States Fifth Circuit Court of Appeals has held that the Court must employ less stringent standards. *Bohannan v. Doe*, 527 F. App'x 283, 2013 WL 2631197, at *4 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). In the prisoner context, in *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14; *see also*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### B. Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176

(5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.   Discussion

#### A.   Oubre's Motion to Dismiss

Nurse Oubre has filed the motion to dismiss based strictly on state law provisions related to the pursuit of malpractice claims against a healthcare provider in accord with La. Rev. Stat. Ann. § 40:1299.41. As urged by Oubre, under that provision, Louisiana law requires that claims against a healthcare provider must be presented to a medical review panel before an action is commenced in a state court. La. Rev. Stat. Ann. § 40:1299.41(B).

However, Louisiana law defines medical malpractice covered by this statute as an unintentional tort. La. Rev. Stat. Ann. § 40:1299.41(A)(8). Shorts, however, has alleged in this federal civil rights complaint that the defendants' actions, including those of Nurse Oubre, were intentional acts of excessive force and intentional indifference to his serious medical needs under federal law pursuant to 42 U.S.C. § 1983. Even under a broad reading, Shorts does not invoke or assert a state law basis for relief or this Court's supplemental jurisdiction and, as will be further discussed in the Court's review for frivolousness, claims of negligent medical care or malpractice are not cognizable under § 1983.

Nevertheless, Shorts is not required to present his § 1983 claims of *intentional* indifference to a medical review panel. *Thomas v. James*, 809 F. Supp. 448, 449 (W.D. La. 1993). Thus, the provisions of Louisiana law cited by Nurse Oubre are not legally relevant to or dispositive of the federal civil rights claims asserted in Shorts' § 1983 complaint. The defendant's motion should be denied.

### B.      Review for Frivolousness

Shorts has filed his complaint pursuant to under 42 U.S.C. § 1983 alleging excessive force and intentional indifference to his serious medical needs. To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). The Court finds that the plaintiff's § 1983 claims are frivolous and otherwise fail to state a claim for which relief can be granted.

#### 1.      Claims of Excessive Force

Shorts alleges that the defendants, Deputies Wilson, Coyle, Morris and Charles, used unnecessary force against him when they pulled him off of the other inmate and held him down with their knees and feet to handcuff him. Based on the following discussion, his claim of excessive force is frivolous.

The United States Supreme Court has "held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" *Wilkins v. Gaddy*, 599 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). The Supreme Court has repeatedly declared that the "core judicial inquiry" is not the quantum of injury sustained, but instead "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *Wilkins*, 599 U.S. at 37; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319-321 (1986).

The Court also recognizes, however that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. The Eighth Amendment's prohibition against cruel and unusual punishment excludes the *de minimis* use of physical force that is not

otherwise "repugnant to the conscience of mankind." *Id*. An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Wilkins*, 559 U.S. at 38 (citing *Hudson*, 503 U.S. at 9).

Shorts only complaint was that Deputy Wilson placed his arm around his neck to pull him up. He indicated that he could not breathe while Deputy Wilson pulled him up. The deputy released the choke hold once Shorts was upright and pulled on the deputy's arm. Shorts expressed no injury or real discomfort caused by the pressure applied to his back or the handcuffing procedure by the other deputies.

In this case, as alleged in the complaint and at the *Spears* Hearing, Shorts own statements establish that the minimal force used to pull him off of the other inmate and to secure the handcuffs was done in a good-faith effort to end the fight and restore discipline in the dorm. As Shorts describes the incident, Deputy Wilson released his neck hold once Shorts was off of Preisley and standing. Shorts also indicates that he placed himself back down on the floor, and the other deputies only momentarily held him down so that handcuffs could be placed on his wrists. He clearly stated that the deputies actions did not cause the broken hand or any other physical injury.

Based on Shorts allegations, as supplemented by his statements at the *Spears* Hearing, his claims of excessive force are frivolous and otherwise fail to state a claim for which relief can be granted. His claims against Deputies Wilson, Coyle, Morris, and Charles should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. §1997e.

### 2. **Claims of Medical Indifference**

Shorts alleges that the defendants failed to provide him with adequate medical care for the injury to his hand following the fight with the other inmate. He asserts that Deputies Wilson, Coyle,

Morris and Charles, did not immediately take him to the medical unit when he requested treatment for his hand after the fight. They instead instructed him to fill out a sick call form, which he did. Furthermore, when he did see Nurse Oubre the same day as the fight, she observed his hand and provided no treatment other than to refer him for an x-ray and give him an ace bandage.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). In applying this standard, the Court's have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley*

*v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).  "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not.  *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).  In addition, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.  *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Shorts alleges that the deputy defendants failed to take him to the medical department when he told them he hurt his hand in the fight.  The attachments forming part of his complaint reflect that Shorts told the deputies that he had an old injury in that hand, and he was able to move the hand

without any problems.[9] The deputies advised him to follow procedure and put in a sick call request even though he said it was an emergency. Shorts does not allege that the deputies acted with an intent to cause him injury or harm or wholly ignored an obvious medical need. In fact, Shorts concedes that when he submitted the form as instructed, he soon was taken to the medical unit that same day where he saw Nurse Oubre. Any brief delay caused by the deputies did not amount to an intentional indifference to his serious medical needs.

Furthermore, according to Shorts, Nurse Oubre examined and questioned him about his hand injury. Apparently recognizing a possible problem, Nurse Oubre scheduled him for an x-ray at the prison on the following Monday and gave him an ace bandage. Shorts disagreed with her treatment plan and simply would have preferred to have gone to the emergency room right away.

In addition, in his complaint, and at the *Spears* Hearing, Shorts recognized that the fight occurred on the evening of Friday, May 22, 2015. The following Monday, May 25, 2015, was Memorial Day, which apparently caused another day's delay in receiving further treatment. The potential for this further delay, he asserts, should have been known by Nurse Oubre when she scheduled the x-ray instead of sending him to the hospital.

Thus, Shorts's claims against Oubre are based on the delay he suffered in receiving treatment for his broken hand. However, where the prisoner's claim rests on a delay in treatment, that delay must result in substantial harm to be entitled to relief under § 1983. *See Mendoza*, 989 F.2d at 195. In this case, Shorts has not alleged a harm, much less a substantial harm, resulting from the delay. Although he endured several days of discomfort, he eventually was placed in a cast and, as he

---

[9]Rec. Doc. No. 4, p. 9.

concedes, his hand has undergone the normal course of healing. There is no indication that the delay amounted to an intentional indifference.

Also, Nurse Oubre's decision to schedule an x-ray rather than send Shorts to the hospital did not amount to an intentional indifference. "[T]he question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Therefore, federal courts do not second-guess medical decisions in federal civil rights actions. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") Nurse Oubre's professional judgment was to schedule x-ray and await further examination by a doctor.

Shorts also asserts that the seriousness of his injury should have been more apparent to Oubre prompting her to do more for his hand. However, while her failure to recognize the need for more urgent care may have constituted deficient care, her failure to recognize the extent of his injury negates any inference that her actions were <u>intentional</u>. As noted above, however, it is well settled that negligent or sub-par medical treatment and even malpractice are not cognizable under § 1983. *Mendoza*, 989 F.2d at 193.

For the foregoing reasons, Shorts § 1983 claims of medical indifference are frivolous and otherwise fail to state a claim for which relief can be granted. The claims against Deputies Wilson, Coyle, Morris, and Charles and Nurse Oubre should be dismissed pursuant to 28 U.S.C. § 1915, § 1915 and 42 U.S.C. § 1997e.

**IV.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Nurse Oubre's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Rec. Doc. No. 17) be **DENIED**.

It is further **RECOMMENDED** that Shorts's claims of excessive force and medical indifference against the defendants, Deputies Wilson, Coyle, Morris, and Charles and Nurse Oubre be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this 19th day of January, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.